# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CATHY MACON, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant.[1] ) | 1:06-cv-855-RLY-TAB |

## ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW

Cathy Macon ("Macon") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I. BACKGROUND

Macon first filed applications for DIB and SSI on May 21, 1996. After administrative denials and a hearing, an Administrative Law Judge ("ALJ") denied benefits on April 23, 1998. Macon asked the Appeals Council for review, but then withdrew her request and filed a second set of applications on October 16, 1998. A hearing was held and on August 24, 2000, an ALJ denied benefits. While Macon's request for review by the Appeals Council was pending, she filed a third set of applications on September 6, 2000. Based on the third set of applications, the State Agency determined that Macon was eligible for benefits with a disability onset date of August 25, 2000, the date following the date of the earlier decision. On February 20, 2004, the Appeals Council issued an order affirming the grant of benefits but remanded the portion of the claim dealing with the period prior to August 25, 2000. A hearing was held on October 29, 2004. Macon was present, accompanied by her attorney. Macon chose to stand by her prior testimony without adding or changing anything. Two medical experts, Dr. Nina Smith, internal medicine, and psychologist Dr. Pitcher, and a vocational expert testified.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ issued a decision on July 14, 2005, denying benefits. On March 24, 2006, the Appeals Council denied Macon's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Macon had not engaged in substantial gainful activity since February 13, 1996, her alleged onset date; (2) Macon was insured for DIB on her alleged onset date and remained insured through December 31, 2001; (3) the medical evidence established that Macon had a "severe" impairment, specifically a chronic pain disorder that imposed physical and mental limitations, but she did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments; (4) Macon's subjective complaints and allegation of total disability were not reasonably consistent with the underlying objective medical evidence and other evidence; (5) Macon had the residual functional capacity ("RFC") for simple, repetitive tasks at the light exertional level; (6) Macon's RFC required no task inconsistent with her past relevant work wiping tables; and (7) Macon was not disabled at step four. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Macon was not under a "disability" as defined in the Act during the period of February 13, 1996, through August 24, 2000.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show

2

>that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

In this case, Macon seeks review of the Commissioner's denial of benefits for a period of time prior to having been awarded benefits in August 2000. The time period at issue is from February 13, 1996, through August 24, 2000. The ALJ determined that although Macon had a "severe" impairment, a chronic pain disorder, she could perform her past relevant work at the light exertional level, and, therefore, was not disabled. Macon argues that the ALJ's decision is not supported by substantial evidence. Specifically, Macon contends that the ALJ failed to properly evaluate the limitations caused by fibromyalgia and failed to properly evaluate her credibility.

Macon contends that the ALJ failed to consider in more detail her symptoms caused by fibromyalgia. She contends that because symptoms of fibromyalgia are entirely subjective, the ALJ should not have discredited the opinion of treating physician Dr. Sundararajan or discounted her credibility.

The ALJ noted that in August 1999, treating physician Dr. Sundararajan submitted a "Medical Source Statement" stating that Macon could not sustain sedentary work on a regular and continuous basis, that she had to rest for four hours during every eight-hour period, and that she could sit two hours and stand or walk two hours over the remaining four hours. (R. at 39).  Dr. Sundararajan further opined that Macon could not lift more than five pounds. *Id.* The ALJ recited the principle that a "treating physician's opinion is entitled to controlling weight if well supported by the objective medical evidence and not inconsistent with substantial other evidence." *Id.* The ALJ determined that Dr. Sundararajan's opinion did not meet this standard.  *Id.*  He noted that a Dr. Lorber recognized within months of Macon's alleged onset date that the objective medical evidence documented only relatively minor musculoskeletal problems and nothing that would prevent her from returning to her bus driver job without limitation. *Id.* The ALJ stated

3

that nothing of an objective nature had indicated that Macon's condition had changed since then. *Id.* He concluded that it therefore appeared that Dr. Sundararajan and other doctors who had indicated that Macon was disabled had put more emphasis on what she had told them than what their objective findings showed. *Id.*

The ALJ also discussed other treating physician reports, noting that Dr. Lorber, Dr. Biel, and Dr. Hackett each opined that Macon could return to work,  (R. at 38), but that Dr. Hackett later stated that Macon should stay off work. (R. at 39). The ALJ noted that a physical therapist suggested that Macon could work at the light and sedentary level, and that her physical therapy results were not a true representation of Macon's ability to work because she had put forth less than a full effort. *Id.* The ALJ also discussed the State Agency physician's conclusion that Macon could perform light level work. *Id.*

The Seventh Circuit discussed the "treating physician rule" in *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006), noting that if well-supported evidence is introduced which contradicts the opinion of a treating physician, then the treating physician evidence is not controlling and it is just one more piece of evidence to consider. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). In addition, the ultimate decision as to a claimant's ability to work is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e) and 416.927(e); Social Security Ruling 96-2p. A treating physician's statement that a claimant is disabled or cannot work is not conclusive. *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'").  The ALJ discussed the record in relation to Dr. Sundararajan's opinion and that of several other physicians, and provided a reasonable explanation for his conclusion in this regard. Under these circumstances, the ALJ's evaluation of the opinion of Dr. Sundararajan is supported by substantial evidence.

The ALJ acknowledged the diagnosis of fibromyalgia as follows:

> The claimant has been diagnosed with fibromyalgia based on positive trigger points. However, many of the medical professionals who have treated or examined her feel nothing is seriously wrong. Several health care professionals, in fact, have gone so far as to question the legitimacy of her complaints by suggesting she is malingering, putting forth little effort, or magnifying her complaints for secondary gain.  Others [sic] care givers have noted the claimant's "non-organic" symptoms, "inappropriate," "dramatic" or "extraordinary, overt" pain behaviors and inconsistent performance during examinations or therapy.

(R. at 37) (citations to record omitted).

In determining Macon's credibility, the ALJ recited the proper criteria to consider: daily activities; the nature, location, onset, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of her medications; treatment, other than medication, for relief of pain; other measures used to alleviate symptoms; and any other factors concerning her functional limitations and restrictions due to her symptoms. *See* (R. at 35-36, citing Social Security Ruling 96-7p; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). The ALJ also noted that other important evidence to consider are statements and reports from the claimant and others, including all treating or examining physicians, psychiatrists or psychologists, about the claimant's medical history, diagnoses, treatment and efforts to work. (R. at 35).

The ALJ discussed Macon's bus accident in 1996, her complaints of neck and back pain and pain in her arm and leg joints, that her pain varied between a "six" and a "ten" and she had "bad" days three or four days a week. (R. at 36). He noted her allegations that a watch was too heavy for her to pick up, she had a tendency to drop things, and could sit for only thirty minutes, and could walk for just one block before needing to rest for up to twenty minutes. *Id.* He also discussed Macon's former husband's testimony. (R. at 41). The ALJ noted MRI results and the lack of any objective indications of neurological deficits or spasm or other abnormality. (R. at 37). Two physicians in 1996 opined that Macon's complaints were "maladaptive and grossly disproportional" and that she had a chronic pain syndrome. *Id.* They opined that her pain was precipitated or aggravated by prolonged inactivity and deconditioning. *Id.*

The ALJ discussed Macon's conservative forms of treatment for pain, and her medications, which included narcotics, analgesics, muscle relaxants, and non-steroidal anti-inflammatory agents. (R. at 37-38). He noted that she reported little benefit from the pain medications but that the insomnia medication helped her sleep pretty well. (R. at 38). The ALJ discussed the general lack of side effects from the medications and the fact that Macon had not always been compliant with her prescriptions. *Id.* He noted other treatments of physical therapy, work hardening, chiropractic care, TENS unit, ice and heat, and trigger point injections. *Id.* The ALJ reviewed the varying views of physicians about Macon's ability to work, some who released her to work without restrictions and some who determined that she could not work. (R. at 38-39).[2]

The ALJ did acknowledge Macon's diagnosis of fibromyalgia. (R. at 37). The ALJ also noted his "serious concerns" about Macon's "forthrightness" in asserting her claims. (R. at 41). He found it significant the number of physicians who had noted a wide gulf

---

[2] The ALJ also discussed evidence relating to Macon's mental impairment. (R. at 39-42). The ALJ noted that when Macon's third applications were considered, the State Agency concluded that Macon had depression severe enough to satisfy Listing 12.04 by August 25, 2000. (R. at 39). The ALJ discussed the evidence for the period prior to August 2000 and determined that Macon did not have a disabling mental impairment during that time. (R. at 39-41). Macon does not challenge this conclusion.

between her allegations as to the severity of her pain and what was shown by objective evidence. *Id.* He noted that physicians had "gone as far as to question its legitimacy, suggest she has an ulterior motive for her ongoing complaints and recommend she undergo surveillance." *Id.* The ALJ referenced evidence indicating that Macon had engaged in drug-seeking behavior. (R. at 41, n. 11). He noted inconsistencies in her responses to tests of her general knowledge in relation to her high school education and in contrast to previous responses, in addition to her statements concerning her alleged weight gain. (R. at 41). The ALJ noted that there was "ample evidence" showing that Macon was embellishing her symptoms.

In sum, the ALJ discussed in detail the various factors to consider in weighing a claimant's credibility. He gave reasons for his conclusions, and those reasons are supported by substantial evidence. The ALJ credited Macon's reports of functional limitations to some extent in assessing her RFC, finding that she could do light level work with restrictions of simple, repetitive tasks. The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). Although fibromyalgia is not diagnosed with objective evidence or testing, having such a diagnosis does not mean that an individual's subjective complaints are automatically entirely credible. The ALJ did not rely completely on the lack of objective evidence in weighing Macon's credibility. He considered all of the evidence, conflicting reports and opinions, various modes of treatment, and the number of times medical professionals questioned Macon's own allegations and her apparent lack of effort in testing situations. The ALJ's discussion relating to Macon's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

In determining Macon's eligibility for benefits for a period of time, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Macon's age, education, and work history; (2) Macon's history of diagnoses, treatment, medications, and evaluations; (3) Macon's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the prior testimony of Macon and her ex-husband, and testimony of medical experts and a vocational expert. The ALJ sufficiently articulated his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). The ALJ built an "accurate and logical bridge from the evidence to his conclusion." *Lopez ex rel. Lopez v. Barnhart*, 336 F3d 535, 539 (7th Cir. 2003) (internal quotation omitted). There was substantial evidence to support the ALJ's determination that Macon was not disabled as defined in the Act during the period of February 13, 1996, through August 24, 2000.

### III. CONCLUSION

There was no reversible error in the assessment of Macon's applications for DIB and SSI. The final decision of the Commissioner that Macon was not disabled during the period of February 13, 1996, through August 24, 2000, is supported by substantial evidence and is not tainted by legal error. In these circumstances, Macon is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/11/2007

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana